COX FRICKE LLP
A LIMITED LIABILITY LAW PARTNERSHIP LLP
JOACHIM P. COX                    7520-0
    jcox@cfhawaii.com
ABIGAIL M. HOLDEN                 8793-0
    aholden@cfhawaii.com
800 Bethel Street, Suite 600
Honolulu, Hawaiʻi 96813
Telephone:  (808) 585-9440
Facsimile:  (808) 275-3276

MATTHEW D. PEARSON *(pro hac vice forthcoming)*
    mpearson@bakerlaw.com
BAKER & HOSTETLER LLP
600 Anton Blvd., Suite 900
Costa Mesa, CA 92626
Telephone:  714.754.6600
Facsimile:   714.754.6611

SARAH A. BALLARD *(pro hac vice forthcoming)*
    sballard@bakerlaw.com
BAKER & HOSTETLER LLP
1801 California Street, Suite 4400
Denver, CO 80202
Telephone:  303.861.0600
Facsimile:   303.861.7805

Attorneys for Defendant
HawaiiUSA Federal Credit Union

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| TONY LEE, individually, and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>    v. | CASE NO.:  _____<br><br>DEFENDANT HAWAIIUSA FEDERAL CREDIT UNION'S NOTICE OF REMOVAL; DECLARATION OF JOACHIM P. |

| HAWAIIUSA FEDERAL CREDIT UNION, | COX; EXHIBITS A - D; CERTIFICATE OF SERVICE |
| Defendant. | |

## DEFENDANT HAWAIIUSA FEDERAL CREDIT UNION'S NOTICE OF REMOVAL

**PLEASE TAKE NOTICE** that, pursuant to 28 U.S.C. §§ 1332(d), 1441, 1446, and 1453, Defendant HawaiiUSA Federal Credit Union ("HawaiiUSA" or "Defendant") hereby removes this action filed by Plaintiff Tony Lee ("Plaintiff"), individually and behalf of all others similarly situated, from the State of Hawaiʻi Circuit Court for the First Circuit, where it is currently pending, to the United States District Court for the District of Hawaiʻi.  In support of removal, HawaiiUSA states as follows:

### <u>JURISDICTION AND VENUE</u>

1.    This is a civil action over which the Court has original subject matter jurisdiction under 28 U.S.C. § 1332.  Removal is proper under the Class Action Fairness Act of 2005 ("CAFA"), codified in pertinent part at 28 U.S.C. § 1332(d).

2.    This Court is in the judicial district and division embracing the place where the state court case was brought and is pending.  Thus, this Court is the proper district court to which this case should be removed.  28 U.S.C. §§ 1441(a), 1446(a).

## BACKGROUND AND TIMELINESS OF REMOVAL

3.      On April 28, 2023, Plaintiff, individually and on behalf of all others similarly situated, filed a Class Action Complaint (the "Complaint") against HawaiiUSA in the Circuit Court for the First Circuit, State of Hawaiʻi, Case No. 1CCV-23-0000553 (the "State Court Action").  Plaintiff filed the Complaint as a putative class action.

4.      On May 4, 2023, Plaintiff served HawaiiUSA with a copy of the Summons and Complaint filed in the State Court Action.  Pursuant to 28 U.S.C. § 1446(a), true and correct copies of all documents received in the State Court Action by HawaiiUSA are attached hereto as Exhibits.  Specifically, attached to this Notice of Removal are true and correct copies of (1) the docket in the State Court Action (**Exhibit A**); (2) the operative Complaint (**Exhibit B**); (3) service documents (i.e., Return and Acknowledgment of Service) (**Exhibit C**); and (4) Civil Information Sheet (**Exhibit D**).

5.      No further pleadings or documents (*i.e.*, answers, state court orders terminating or dismissing parties, responses, or replies to pending motions) have been filed in the State Court Action.

6.      This removal is timely because HawaiiUSA filed this removal within 30 days of being served with the Complaint.  *See* 28 U.S.C. § 1446(b) (notice of removal shall be filed within 30 days of service); *Murph Bros. v. Michetti Pipe*

*Stringing, Inc.*, 526 U.S. 344, 348 (1999) (time period for removal begins when the defendant is served).

## CAFA JURISDICTION

7.     <u>Basis of Original Jurisdiction</u>. This Court has original jurisdiction over this action under CAFA (codified in pertinent part at 28 U.S.C. § 1332(d)).  Section 1332(d) provides that a district court shall have original jurisdiction over a class action with one hundred (100) or more putative class members in which the matter in controversy, in the aggregate, exceeds the sum or value of $5,000,000, and any member of the putative class is citizen of a different state than that of the defendant. § 1332(d)(1)-(2)(A); *Yocupicio v. PAE Grp., LLC*, 795 F.3d 1057, 1059 (9th Cir. 2015) (quoting *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 84-85 (2014)).

8.     As set forth below, pursuant to 28 U.S.C. § 1332(d) and § 1441(a), HawaiiUSA may remove the State Court Action to federal court under CAFA because: (1) this action is pled as a class action; (2) the putative class includes more than one hundred (100) members; (3) "minimal diversity" exists, *i.e.*, at least one member of the putative class is a citizen of a state different from that of Defendant; and (4) the matter in controversy, in the aggregate, exceeds the sum or value of $5,000,000, exclusive of interest and costs.  *See Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1020 (9th Cir. 2007) (citation omitted).

## THE ACTION IS PLED AS A CLASS ACTION

9.      CAFA defines a "class action" as "'any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action.'" *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co., et al.*, 602 F.3d 1087, 1089 (9th Cir. 2010) (quoting 28 U.S.C. § 1332(d)(1)(B)).

10.     Plaintiff brings this action as a "class action" and seeks certification of a class pursuant to Hawai'i Rules of Civil Procedure ("HRCP") Rule 23.  [Compl., ¶ 88.]  Because HRCP Rule 23 is a "similar State statute authorizing an action to be brought by 1 or more representatives as a class action" and because "[t]he requirements in Hawai'i Rule of Civil Procedure 23[] . . . are substantively identical to the requirements of Federal Rule of Civil Procedure 23[]," *Villon v. Marriott Hotel Servs.*, Civil No. 08–00529 LEK–RLP, 2011 WL 2160483, at *6 n.9 (D. Haw. May 31, 2011), the first CAFA requirement is satisfied, [*see* Compl., ¶ 88 (bringing action "as a class action pursuant to Haw. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3)" and defining class as "[a]ll persons in the United States whose PII was accessed in the Data Breach.").]

5

## THE PUTATIVE CLASS INCLUDES AT LEAST ONE HUNDRED (100) MEMBERS

11.     Plaintiff alleges that, "on or around December 12, 2022, Defendant's current and former employees' and consumers' sensitive personal and/or financial data was compromised when unauthorized actors were able to breach an employee's email account on Defendant's network and access files containing PII for approximately 20,889 individuals" (the "Data Incident") [Compl., ¶¶ 4, 28.]

12.     Plaintiff now purports to bring "this action on behalf of all those similarly situated to seek relief from Defendant[]" following the Data Incident, and defines the putative class as "[a]ll persons in the United States whose PII was accessed during the Data [Incident]." [*Id.* at ¶¶ 10, 88.]

13.     Further, Plaintiff asserts that approximately 20,889 individuals were impacted by the Data Incident. [*Id.* at ¶ 89; *see also id.* at ¶¶ 20, 28 (stating that the Data Incident "resulted in unauthorized third parties accessing the PII of approximately 20,889 current and former employees and consumers" of HawaiiUSA).]

14.      HawaiiUSA sent data incident notification letters to approximately 20,889 individuals.

15.     Based on the above, the number of putative class members exceeds the statutorily-required minimum of 100 individuals. *See Kuxhausen* v. *BMW Fin. Servs. NA LLC*, 707 F.3d 1136, 1140 (9th Cir. 2013) (finding that where a plaintiff

6

alleges that the estimated number of putative class members in the complaint is greater than 200, "[n]o investigation" or "further inquiry" is necessary for the court to conclude that CAFA numerosity is satisfied).

## **MINIMAL DIVERSITY OF CITIZENSHIP EXISTS**

16.    Pursuant to 28 U.S.C. § 1332(d)(2)(A), "the district court shall have original jurisdiction" over a "class in which . . . ***any member of the class of plaintiffs*** is a citizen of a State different from ***any defendant***."  (emphasis added).  *See also Broadway Grill, Inc. v. Visa Inc.*, 856 F.3d 1274, 1277 (9th Cir. 2017) (stating that "CAFA only requires what is termed 'minimal diversity,'" *i.e.*, when "any member of a class of plaintiffs is a citizen of a state different from any defendant") (citation omitted).  Accordingly, if any member of the purported class is a citizen of a state different than the state of citizenship of HawaiiUSA, then minimal diversity exists. *See Ehrman v. Cox Commc'ns, Inc.*, 932 F.3d 1223, 1226 (9th Cir. 2019).

17.    HawaiiUSA's Citizenship.   Pursuant to 28 U.S.C. § 1332(c), a corporation is "deemed a citizen of its place of incorporation and the location of its principal place of business."  *Nike, Inc. v. Comercial Iberica de Exclusivas Deportivas, S.A.*, 20 F.3d 987, 990 (9th Cir. 1994); 28 U.S.C. § 1332(c)(1). Federally-chartered entities, including federal credit unions, have been found to be citizens of the state of where their principal place of business is located.  *See Kahapea v. Hawaii St. Fed. Credit Union*, CIV. NO. 20-00281 LEK-KJM, 2021 WL

4267506, at *4 (D. Haw. Sept. 20, 2021); *c.f. Lloyd v. Navy Fed. Credit Union*, Case No. 17-cv-1280-BAS-RBB, 2019 WL 2269958, at *5 (S.D. Cal. May 28, 2019) (noting that, for purposes of 28 U.S.C. § 1332(c)(1), defendant credit union "qualifie[d] as a 'corporation' in view of the statutes under which credit unions are created") (citing 12 U.S.C. § 1754)); *see also* 28 U.S.C. § 1332(c)(1) ("[A] corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business."). A corporation's "'principal place of business'" has been dubbed its "nerve center," and is "'the place where [the] corporation's officers direct, control, and coordinate the corporation's activities.'" *Ward Mgmt. Dev. Co., LLC v. Nordic PLC Constr., Inc.*, Civ. No. 17-00568 JMS-RLP, 2018 WL 3733608, at *3 (D. Haw. Aug. 6, 2018) (quoting *Hertz Corp. v. Friend*, 559 U.S. 77, 80 (2010)).

18.     As alleged in the Complaint, HawaiiUSA is a corporation "organized under the laws of Hawai'i with its principal place of business as 1226 College Walk, Honolulu, Hawai'i 96817." [Compl., ¶ 15.] Plaintiff also alleges that HawaiiUSA "operates more than a dozen branches, all of which are located in the Hawaiian islands." [*Id.*] Accordingly, because HawaiiUSA is organized under the laws of Hawai'i and maintains its principal place of business in Hawai'i, it is a citizen of Hawai'i for purposes of CAFA.

19.   <u>Plaintiff's and the Putative Class' Citizenship</u>.   For diversity purposes, an individual is a "citizen" in the state in which he or she is domiciled.   *Adams v. W. Marine Prods., Inc.*, 958 F.3d 1216, 1221 (9th Cir. 2020).   "One's domicile is his or her 'permanent home'—that is, where (i) she resides, (ii) 'with the intention to remain there or to which she intends to return.'"   *Id.* (quoting *Mondragon v. Capital One Auto Fin.*, 736 F.3d 880, 886 (9th Cir. 2013)).   A person's state of residency is not equivalent to domicile (nor, therefore, citizenship), although residency is one factor to be considered in the domicile analysis.   *Id.* (citing *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001)); *see also Ehrman*, 932 F.3d at 1227 (citations omitted); *Gilliam v. Galvin*, CIVIL NO. 19-00127 JAO-RT, 2019 WL 3604592, at *4 (D. Haw. Aug. 6, 2019) ("For diversity purposes, citizenship is not the same as residency.") (citation omitted).

20.   As alleged in the Complaint, Plaintiff is a "resident and citizen of Hawai'i, residing in Mililani, Hawai'i."   [Compl., ¶ 11.]   Accordingly, absent information to the contrary, Plaintiff is a citizen of Hawai'i.   *See Adams*, 958 at 1221 (citing *Kanter*, 265 F.3d at 857).

21.   Plaintiff, however, however, also seeks to represent a class that includes "[a]ll persons in the United States whose PII was accessed in the Data [Incident]."   [Compl., ¶ 46; *see also id.* at ¶ 89 ("[A]pproximately 20,889 individuals comprise the class and were affected by the Data [Incident].").]   To date, HawaiiUSA has sent

notice of the alleged Data Incident to individuals with addresses in 47 other states other than Hawai'i, the District of Columbia, multiple U.S. territories, including Guam and American Samoa, and individuals with American military addresses in Europe, Korea, Thailand, and Japan.

22.     Therefore, the class, as defined by Plaintiff, includes individuals who, in the absence of other evidence to the contrary, are residents and domiciled in—and thus citizens of—states other than Hawai'i, the state of citizenship of HawaiiUSA. Said differently, because at least one putative class member is a citizen of a state other than Hawai'i, "minimal diversity" is established pursuant to CAFA.  *See Abrego v. Dow Chem. Co.*, 443 F.3d 676, 684 (9th Cir. 2006) (citing 28 U.S.C. § 1332(d)(2)(A)).

## THE AMOUNT IN CONTROVERSY EXCEEDS THE CAFA THRESHOLD[1]

23.     Where a complaint does not specify the amount of damages sought, as is the case with Plaintiff's Complaint, the removing defendant must prove by a preponderance of the evidence that the jurisdictional amount-in-controversy is

---

[1] The amounts set forth in this Notice of Removal are solely for purposes of establishing that the amount in controversy exceeds the $5,000,000 threshold and are not intended and cannot be construed as an admission that Plaintiff or putative class members can state or have stated a claim or that they are entitled to damages in any amount.  HawaiiUSA denies liability, denies Plaintiff and/or class members are entitled to recover any amount, and denies that a class can be properly certified in this matter.

satisfied.  28 U.S.C. § 1446(c)(2)(b).  The United States Supreme Court has held that "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold" to meet the amount-in-controversy requirement.  *Dart Cherokee Basin Operating Co.*, 574 U.S. at 89.  The amount in controversy is "presumptively satisfied" unless "it appears to a 'legal certainty' that the plaintiff cannot actually recover that amount."  *Guglielmino v. McKee Foods Corp.*, 506 F.3d 595, 699 (9th Cir. 2007) (citing *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 402 (9th Cir. 1996)).  Furthermore, in determining the amount in controversy under CAFA, the claims of all plaintiffs are aggregated to determine if the amount in controversy is more than $5,000,000, *Fergerstrom v. PNC Bank, N.A.*, CIVIL NO. 13-00526 DKW-RLP, 2013 WL 12152469 , at *1 (D. Haw. Dec. 30, 2013), including "'class members' . . . (named or unnamed) who fall within the definition of the *proposed* or certified class,'" *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592 (2013) (citation omitted) (emphasis in original).  In determining the amount in controversy, the Court must accept "all allegations contained in the complaint as true and assumes the jury will return a verdict in plaintiff's favor on every claim."  *Henry v. Cent. Freight Lines, Inc.*, 692 F. App'x 806, 807 (9th Cir. 2017).  The "jurisdictional threshold is not defeated merely because it is equally possible that the damages [ultimately awarded]

might be less than the . . . requisite amount." *Avila v. Kiewit Corp.*, 789 F. App'x 32, 33 (9th Cir. 2019) (citation and internal punctuation marks omitted).

24.     Here, Plaintiff seeks damages in the form of "declaratory and injunctive relief," "all monetary and non-monetary relief allowed by law," statutory damages, punitive damages, "three times the amount of actual damages, as permitted by Haw. Rev. Stat. § 480-13," equitable relief, and all other relief the Court "deems just and proper." [Compl., ¶ 211; Prayer for Relief.]  Plaintiff also claims that he and Class members have suffered injury and damages, including, but not limited to,

> (a) Theft of PII, including protected financial information; (b) Costs associated with the detection and prevention of identity theft and unauthorized use of financial accounts as a direct and proximate result of the PII stolen during the Data [Incident]; (c) Damages arising from the inability to use accounts that may have been compromised during the Data [Incident]; (d) Costs associated with spending time to address and mitigate future consequences of the Data [Incident] . . . (e) The imminent and impending injury resulting from potential fraud and identity theft posed because their PII is exposed for theft and sale on the dark web; and (f) The loss of [his] and Class members' privacy.

[*Id.* at ¶ 77.]  Plaintiff also claims that he is entitled to other "equitable relief . . . including . . . disgorgement and restitution"; "monetary damages, injunctive relief and/or other remedies"; "injunctive relief to prohibit Defendant from continuing to engage in . . . unlawful acts, omissions, and practices described [in the Complaint]"; and "compensatory, consequential, and general damages in an amount to be determined at trial."  [*Id.* at Prayer for Relief.]

25.     As demonstrated below, the allegations in the Complaint make it more likely than not that the amount in controversy under CAFA exceeds $5,000,000.

26.     <u>Negligence and negligence *per se*</u>.     Plaintiff brings claims for negligence and negligence *per se*.    [Compl., ¶¶ 95-113 (negligence); ¶¶ 114-23 (negligence *per se*).]

27.     Plaintiff alleges that HawaiiUSA "owed a duty to Plaintiff and the class to use and exercise reasonable and due care in obtaining, retaining, and securing the PII that [HawaiiUSA] collected." [*Id.* at ¶ 97.] Plaintiff also asserts that HawaiiUSA had duties, including, *inter alia*, responsibility to use reasonable security measures under the common law, Section 5 of the Federal Trade Commission Act ("FTC"), 15 U.S.C. § 45, and to notify the "owner or licensee of [personal] information of any security breach [involving that information] immediately following the discovery of the breach" under Hawaii's Security Breach of Personal Information Law ("HSB"), Haw. Rev. Stat. § 487N-2(b). [*Id.* at ¶¶ 116-17.]

28.     Plaintiff further alleges that HawaiiUSA breached these and other duties, and therefore was negligent, by failing to provide fair, reasonable, or adequate cyber networks and data security practices to safeguard the PII belonging to him and the Class" and "by creating a foreseeable risk of harm through the misconduct previously described [in the Complaint]." [*Id.* at ¶¶ 106-07.]

29.     Plaintiff also alleges that HawaiiUSA's failure to comply with Section of the FTC and the HSB constitutes negligence *per se*.  [*Id.* at ¶ 120.]

30.     The Complaint contains no allegations that would support or suggest the amount in damages Plaintiff or any of the putative class members allegedly sustained as a consequence of HawaiiUSA's negligence or negligence *per se*. However, because Plaintiff seeks injunctive relief and has specifically stated that the one-year of credit monitoring HawaiiUSA previously offered Plaintiff and the putative class is "inadequate to mitigate the aforementioned injuries and Plaintiff and Class Members have suffered and will continue to suffer as a result of the Data [Incident]," [*id.* at ¶ 78; Prayer for Relief(C)], one option for assigning a value to these damages is through the cost of credit monitoring.

31.     Three prominent identity-protection agencies (Equifax, IDShield, and Experian) advertise monthly rates for credit monitoring services ranging from $14.95 to $24.99 per person per month.  For example, IDShield Individual offers one-bureau credit monitoring with an unlimited service guarantee, dark web internet monitoring, data breach notifications, full-service restoration when theft occurs, and 24/7 emergency assistance, among other services, for $14.95 per month for one

individual.[2]  Similarly, both Equifax[3] and Experian[4] offer products that provide 3-Bureau credit monitoring with up to $1 million in identity theft insurance for $19.95 and $24.99 a month, respectively.  Multiplying the cost of providing an additional year of credit-monitoring services at $14.95 (the cheapest of the three products) by the number of alleged putative class members, the amount in controversy for just one additional year of credit monitoring is approximately $3,749,280.60 (calculated as 20,889 individuals notified of the Data Incident, times 12 months, times $14.95 per month).  And providing just two additional years of credit-monitoring services at $14.95 (the cheapest of the three products) to all members of the putative class increases the amount in controversy to approximately $7,498,561.20 for credit

---

[2] See *IDShield Plans & Pricing*, https://www.idshield.com/plans-and-pricing (last visited May 25, 2023); *see also IDShield Individual (Hawaii)*, https://checkout.idshield.com/?plan=IDSI&freetrial=true&region=TX (last visited May 25, 2023).

[3] *See Equifax*, https://www.equifax.com/equifax-complete-Equifax/?CID=2_equifax%20credit%20monitoring_G_e&adID=502355994880&DS3_KIDS=p50281164756&campaignid=71700000061086345&sakwid=43700050281164756&gclid=EAIaIQobChMIzpzAneG28wIVS9KzCh3vCA_MEAAYASAAEgIjevD_BwE&gclsrc=aw.ds (last visited May 25, 2023).

[4] *See Experian CreditLock*, https://www.experian.com/consumer-products/creditlock.html?pc=sem_exp_google&cc=sem_exp_google_ad_858684474_45405224126_515795132613_kwd-381685474538_e___k_EAIaIQobChMIwIyw3OCR_wIV8zWtBh1hrQYEEAAYAiAAEgIt-_D_BwE_k_&ref=identity&awsearchcpc=1&gad=1&gclid=EAIaIQobChMIwIyw3OCR_wIV8zWtBh1hrQYEEAAYAiAAEgIt-_D_BwE, (last visited May 25, 2023).

monitoring alone, far in excess of the CAFA $5,000,000 threshold (calculated as 20,889 individuals notified of the Data Incident, times 24 months, times $14.95 per month).

32.   Accordingly, Plaintiff's and the putative class members' potential credit-monitoring damages alone nearly meet or exceed the CAFA $5,000,000 jurisdictional amount.  Combined with their other alleged negligence and negligence *per se* damages, the total amount in controversy is well in excess of $5,000,000.

33.   <u>Violation of the Hawaiʻi Unfair Deceptive Acts or Practices Statute</u>. Plaintiff also alerts that HawaiiUSA violated the Hawaiʻi Unfair Deceptive Acts or Practices Statute ("UDAP"), Haw. Rev. Stat. §§ 480-2(a), 480-13(b).  [Compl., ¶¶ 165-90.]  Plaintiff asserts that HawaiiUSA engaged in both deceptive acts or practices and unfair acts or practices under the UDAP.  [*Id.*]

34.   Plaintiff claims that HawaiiUSA engaged in deceptive acts or practices in violation of UDAP by, among other things, "[f]ailing to implement and maintain reasonable security and privacy measures to protect Plaintiff's and Class Members' PII"; "[m]isrepresenting that it would protect the privacy and confidentiality of Plaintiff's and Class Members' PII"; and "[o]mitting, suppressing, and concealing the material fact that [HawaiiUSA] did not comply with common law, statutory, and self-imposed duties pertaining to the security and privacy of Plaintiff's and Class Members' PII."  [*Id.* at ¶ 168.]  Plaintiff claims that HawaiiUSA engaged in unfair

acts or practices in violation of UDAP for the same or similar reasons, but also because HawaiiUSA's "practices were . . . contrary to legislatively declared and public policies that seek to protect data and ensure that entities who solicit or are entrusted with personal data utilize appropriate security measures, as reflected in laws, such as the HSB and the FTC Act." [*Id.* at ¶¶ 185-86.]

35.   As a result of HawaiiUSA's purported UDAP violations, Plaintiff claims that he and class members have been damaged in the following aways, including, among others, "theft of their PII"; "loss of use of and access to their accounts and funds and costs associated with the inability to obtain money from their accounts or being limited in the amount of money they were permitted to obtain from their accounts . . ."; "damages to and diminution in the value of their personal information"; "unauthorized charges on their debit and credit cards"; and "costs associated with the detection and prevention of identity theft and unauthorized use of their financial accounts." [*Id.* at ¶¶ 178, 188.]

36.   Although Plaintiff's Complaint contains no allegations that would support or suggest the amount in damages he or any of the putative class members allegedly sustained as a result of HawaiiUSA's alleged violations of the UDAP, the UDAP, assuming it is applicable here, permits an injured plaintiff to "sue for damages sustained . . . and, if the judgment is for the plaintiff, the plaintiff shall be awarded a sum not less than $1,000 or threefold damages by the plaintiff sustained,

whichever sum is the greater. . . " Haw. Rev. Stat. § 480-13(b).  In addition, if a plaintiff is an elder (*i.e.*, a consumer who is 62 years or older, *see* Haw. Rev. Stat. § 480-13.5(c)), the plaintiff "may be awarded a sum not less than $5,000 or threefold damages sustained by the plaintiff, whichever sum is greater," Haw. Rev. Stat. § 480-13(b).

37.    Plaintiff's Complaint does not contain allegations that would support or sustain the amount of damages he has sustained for purposes of treble damages permitted under § 480-13(b).  Thus, assuming the statutory damage amount of $1,000 per putative class member was valid and awarded, the amount in controversy would increase by $20,889,000 (calculated as 20,889 individuals allegedly impacted, multiplied by $1,000), far exceeding the $5,000,000 CAFA threshold. And, assuming any of the putative class members are "elders" as that term is defined under the HUDAP, the amount-in-controversy would be even greater.[5] *See, e.g.*, *Bartholoma v. Marriott Bus. Servs.*, Civ. No. 18-00044 JMS-RLP, 2018 WL 3364661, at *5 n.7 (D. Haw. July 10, 2018) (finding CAFA amount-in-controversy threshold met under when plaintiffs made clear they sought treble damages under § 480-13 and alleged to have sustained damages in excess of $2.2 million).

---

[5] The HUDAP also permits the Court to impose a civil penalty of no more than $10,000 for each violation of § 480-2 if the violation is "directed toward, targets, or injures an elder."  Haw. Rev. Stat. § 480-13.5(a).

38.   <u>Prayer for Other Monetary and Injunctive Relief</u>.  Plaintiff also prays for additional monetary and injunctive relief.  [Compl., ¶¶ 180, 190, 205, 211; Prayer for Relief(C).]  For example, in addition to the relief requested for HawaiiUSA's alleged violation of each of the claims asserted in the Complaint, Plaintiff prays for "all such equitable relief as it deems proper and just, including, but not limited to, disgorgement and restitution"; "pre- and post-judgment interest to the maximum legal rate"; "costs and disbursements of the action, along with reasonable attorneys' fees, costs, and expenses"; and "all other relief [the Court] deems just and proper." [*Id.* at Prayer for Relief(C)-(J).]  These requests for relief, combined with the other damages alleged in the Complaint, further demonstrate that the amount in controversy exceeds the CAFA threshold.

39.   Plaintiff also prays for "permanent injunctive relief to prohibit Defendant from continuing to engage in the unlawful acts, omissions, and practices described [in the Complaint]."  [*Id.* at Prayer for Relief(I).]

40.   In actions seeking declaratory or injunctive relief, "it is 'well established that the amount in controversy is measured by the value of the object of the litigation.'"  *Wegesend v. Envision Lending Grp., Inc.*, Civil No. 13–00493 DKW–KSC, 2014 WL 1745340, at *2 (D. Haw. Apr. 30, 2014) (quoting *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir. 2002)); *Pagel v. Dairy Farmers of Am., Inc.*, 986 F. Supp. 2d 1151, 1159 (C.D. Cal. 2013) (citation omitted).  "The object

of the litigation is 'the value of the right to be protected or the extent of the injury to be prevented.'" *Wegesend*, 2014 WL 1745340, at *2 (quoting *Jackson v. Am. Bar Ass'n*, 538 F.2d 829, 831 (9th Cir. 1976)).

41.   In determining the "value of the object of the litigation," courts in the Ninth Circuit have adopted the "either viewpoint rule," which provides that a court should consider "'the pecuniary result to either party which the judgment would directly produce'" when determining the amount in controversy.   *Van Dyke v. Retzlaff*, No. CV-18-04003-PHX-SMB, 2019 WL 276037, at *2 (D. Ariz. Jan. 22, 2019) (quoting *In re Ford Motor Co./Citibank (S. Dakota), N.A.*, 264 F.3d 952, 958 (9th Cir. 2001)).   "'Under this rule, either the plaintiff's potential recovery or the potential cost to the defendant of complying with the injunction must exceed the jurisdictional threshold.'"   *Id.* (quoting *Stelzer v. CarMax Auto Superstores Cal., LLC*, No. 13–cv–1788 BAS (JMA), 2014 WL 3700269, at *3 (S.D. Cal. July 24, 2014)); *see also Lokey v. CVS Pharmacy, Inc.*, Case No. 20-cv-04782-LB, 2020 WL 5569705, at *5 (N.D. Cal. Sept. 17, 2020) ("It is proper under CAFA to consider the defendant's cost of compliance with an injunction just as it is proper to consider the plaintiff's benefit from the injunction.") (citation omitted).   Further, in class actions removed under CAFA, the Court may aggregate each class member's claims for injunctive relief (and respective damages) to determine whether the aggregate cost

to the defendant of complying with any injunctive relief requested exceeds the amount in controversy threshold. *Pagel*, 986 F. Supp. 2d at 1160 (citation omitted).

42.     Applied here, any potential recovery to Plaintiff, including injunctive and equitable relief as necessary to protect the interests of Plaintiff and the putative class, to the extent such relief exists, combined with the other damages alleged in the Complaint, underscores that the amount in controversy is greater than $5,000,000.

43.     From the "viewpoint" of Defendant, the aggregate cost to HawaiiUSA of complying with Plaintiff's request for "injunctive relief to prohibit Defendant from continuing to engage in the unlawful acts, omissions, and practices described [in the Complaint]," [Compl., Prayer for Relief(C)], would potentially involve overhauling HawaiiUSA's state and federal regulatory privacy and cyber security policies, implementing new training procedures, and potentially hiring outside auditors and third-party forensic firms to conduct testing and reviews of HawaiiUSA's systems, network, and relevant policies in order to try to make itself invulnerable to a future data incident.   The cost of modifying HawaiiUSA's privacy and cyber security policies in order to do so could also include instituting new training and hiring outside vendors.   Together with the other injunctive and other monetary relief requested and combined with the other damages alleged in the Complaint, the cost to comply with Plaintiff's injunctive relief request further

underscores that the amount in controversy is greater than $5,000,000.  *See, e.g.*, *Lokey*, 2020 WL 5569705, at *5 (agreeing with defendant's assessment that the cost of complying with plaintiff's requested injunctive relief was "at least $3,888,363," when compliance potentially entailed "overhauling [the product at issue] in some way," including by "removing the product from shelves and warehouses, destroying existing inventory, developing new packaging, replenishing the inventory, and changing the product's marketing and advertising scheme" and therefore finding the injunctive relief costs, considered with the other damages alleged in the complaint, exceeded the $5 million CAFA threshold).

44.   <u>Other Claims</u>.  In addition to the claims and related damages discussed above, Plaintiff also asserts claims for (1) breach of implied contract, [Compl., ¶¶ 124-33]; (2) bailment, [*id.* at ¶¶ 134-45]; (3) intrusion upon seclusion, [*id.* at ¶¶ 146-53]; (4) unjust enrichment, [*id.* at ¶¶ 154-64]; and (5) violation of the HSB, Haw. Rev. Stat. § 487N-2(b), [*id.* at ¶¶ 206-11].  Plaintiff alleges that he has suffered or will suffer damages related to these causes of action, including, but not limited to, "actual injury from having his PII compromised"; "damage to and diminution in the value of his PII"; "violation of his privacy rights"; and "imminent and impending injury from the increased risk of identity theft and fraud." [*Id.* at ¶ 87; *see also id.* at ¶¶ 133, 145, 153, 164.]  As a result, Plaintiff seeks compensation for these alleged injuries.  [*Id.* at Prayer for Relief.]

45.     No allegations in the Complaint allow HawaiiUSA to calculate with specificity the amount of these alleged damages and relief.  However, HawaiiUSA underscores these allegations to the Court as further evidence that the amount in controversy exceeds $5,000,000, as already established above.  *See, e.g.*, *Greene v. Harley-Davidson, Inc.*, 965 F.3d 767, 774 (9th Cir. 2020) (finding plaintiff's complaint "put more than $5 million in controversy" when he sued for "compensatory damages, punitive damages, and attorney's fees for a two year class period").

### ATTORNEYS' FEES

46.     When the underlying substantive law provides for an award of attorneys' fees, a party may include that amount in its calculation of the amount in controversy.  *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998); *Lovel v. United Airlines, Inc.*, Civil No. 09–00146 ACK–LEK, 2009 WL 3172680, at *5 (D. Haw. Aug. 18, 2009) ("If attorneys' fees are statutorily authorized, they may be included in the amount in controversy.") (citation omitted).  The Court may also consider reasonable estimates of attorneys' fees when analyzing disputes over the amount in controversy.  *See Barbosa v. Transp. Drivers, Inc.*, Case No. ED CV 15-1834-DMG (DTBx), 2015 WL 9272828, at *4 (C.D. Cal. Dec. 18, 2015) (citing *Brady v. Mercedes-Benz USA, Inc.*, 243 F. Supp. 2d 1004, 1010-11 (N.D. Cal. 2002)).

47.     Plaintiff has sought attorneys' fees pursuant to the UDAP and the HSB. [*See* Compl., ¶¶ 180, 190, 205; Prayer for Relief(F) & (G)]; *see also* Haw. Rev. Stat. § 480-13(b) (stating that "reasonable attorneys' fees together with the costs of suit" may be awarded to a successful plaintiff); Haw. Rev. Stat. § 487N-3(b) ("The court in any action brought under this section may award reasonable attorneys' fees to the prevailing party.").  Attorneys' fees should therefore be included in the amount in controversy.

48.     In the Ninth Circuit, 25% of the award has been used as a "benchmark" for attorneys' fees in class actions.  *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 949 (9th Cir. 20105); *Aquilina v. Certain Underwriters at Lloyd's London*, No. 1:18-cv-00496-ACK-KJM, 2021 WL 3611027, at *16 (D. Haw. Aug. 13, 2021) (collecting cases).  Using this benchmark, attorneys' fees, when added to the amounts discussed above, further increase the amount in controversy for alleged exposure above the jurisdictional minimal for removal.

49.     Accordingly, because this case was pled as a class action, and because minimal diversity, class size, and the amount in controversy requirements of CAFA are satisfied, HawaiiUSA has properly removed the State Court Action to this Court.

50.     Indeed, based on the above, there is no "legal certainty" that Plaintiff could not recover an aggregate amount exceeding $5,000,000 required for CAFA removal.  *See* 28 U.S.C. § 1332(d)(6); *Guglielmino*, 506 F.3d at 699; *Sanchez*, 102

F.3d at 402.  Accordingly, HawaiiUSA has properly removed the State Court Action to this Court.[6]

## NOTICE

51.     As required by 28 U.S.C. § 1446(d), HawaiiUSA is providing written notice of the filing of this Notice of Removal to Plaintiff and is filing a copy of this Notice of Removal with the Clerk of the Circuit Court for the First Circuit, State of Hawai'i.

WHEREFORE, Defendant HawaiiUSA Federal Credit Union removes the State Court Action from the Circuit Court for the First Circuit, State of Hawai'i, to the United States District Court for the District of Hawai'i.

DATED:  Honolulu, Hawai'i, June 2, 2023.

*/s/ Joachim P. Cox*
JOACHIM P. COX
ABIGAIL M. HOLDEN
MATTHEW D. PEARSON *(pro hac vice forthcoming)*
SARAH A. BALLARD *(pro hac vice forthcoming)*

Attorneys for Defendant
HAWAIIUSA FEDERAL CREDIT UNION

---

[6] The party opposing removal jurisdiction has the burden of proving that a discretionary or mandatory exception under CAFA applies.  *Serrano*, 478 F.3d at 1024 ("[A]lthough the removing party bears the initial burden of establishing federal jurisdiction under § 1332(d)(2), once federal jurisdiction has been established under that provision, the objecting party bears the burden of proof as to the applicability of any express statutory exception.").  This Notice of Removal does not address, nor concede, any issues related to the CAFA jurisdiction exceptions.